UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - -:
VICTOR KOLTUN,                     : 13 Civ. 1612 (PAC) (JCF)
                                   :
          Plaintiff,               :      REPORT AND
                                   :   RECOMMENDATION
     - against -                   :
                                   :
JEFFREY BERRY, B. HAROLD RAMSEY,   :
AARON WEAVER, THOMAS NAFFY, JOSEPH :
CORTES, RUDY SIMMONS, MICHAEL      :
FERRARA, JOSEPH D'AMICO, FRANCIS D.:
PHILLIPS II, GARRY COOPER, JAMES   :
WINSLOW and PAUL BRITE, in their   :
individual and official capacities,:
                                   :
          Defendants.              :
- - - - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:

Plaintiff Victor Koltun, proceeding pro se, brings this action under 42 U.S.C. §§ 1983 and 1985 against his former court-appointed attorneys, employees of the Orange County District Attorney's Office, state court judges, and officers of the Newburg Police Department and the New York State Police Department, alleging constitutional violations arising out of his ongoing state court criminal proceeding.  The plaintiff's former defense counsel, James Winslow and Paul Brite, have both moved to dismiss the complaint against them, as have the Orange County District Attorney ("OCDA") Francis D. Phillips, II and Garry Cooper, an investigator in that office.  For the following reasons, I recommend that all of the motions be granted.

Background

The following facts are based on the allegations in the

1

plaintiff's complaint and accompanying affidavits,[1] as well as matters of which the Court may take judicial notice.  See Mary Jo C. v. New York State and Local Retirement System, 707 F.3d 144, 149 (2d Cir. 2013).  Specifically, I take judicial notice of the New York State prosecution of Mr. Koltun, which is a matter of public record.  See Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012) (taking judicial notice of state criminal prosecution); Shmueli v. City of New York, 424 F.3d 231, 233 (2d Cir. 2005) (same); Carrion v. Singh, No. 12 CV 360, 2013 WL 639040, at *4 (E.D.N.Y. Feb. 21, 2013) (noting that in adjudicating on motion to dismiss, court may take judicial notice of state court orders, and collecting cases).

On Saturday, November 6, 2010, officers of the Newburg Police Department and the New York State Police Department (collectively the "police") arrived at 1500 State Route 55E, Lock Sheldrake, New York to speak with the plaintiff.  (Affidavit of Victor Koltun dated March 5, 2013 ("Koltun Aff."), attached to Compl., ¶¶ 14-15). According to the plaintiff, he said to the police, "I do not wish to answer any questions without my attorney," "I do not wish to waive my constitutional right to counsel," and "I wish to speak to my attorney first before I speak with you."  (Koltun Aff., ¶ 15). Mr. Koltun is an "ultra-orthodox Jewish person and a Rabbi," and

---

[1] According to the complaint, the facts are "set forth in 12 accompanying affidavits" and in the complaint.  (Complaint ("Compl."), ¶ III(C)).  The accompanying affidavits address each of the defendants separately and are identical except for the second paragraph, which addresses specific facts about the individual defendant, and the tenth paragraph, which requests differing amounts of damages.  The affidavits will be referred to collectively as the Affidavit.

because both he and his attorney observe Sabbath on Saturday, the plaintiff could not call his attorney until after sundown. (Koltun Aff., ¶¶ 14-15). The plaintiff informed the police that he would speak to them after sundown with the assistance of his attorney. (Koltun Aff., ¶ 15). According to the plaintiff, the police "applied psychological pressure to stop religious service," "placed emphasis on [the] nature of [the] investigation," and "lured" him to the police station. At the station, the police allegedly "attempted to coerce [a] confession" out of him. (Koltun Aff., ¶ 16). Mr. Koltun claims that the police were acting under the "direct and or [sic] implied direction" of the OCDA's office during this time. (Koltun Aff., ¶ 13).

On December 1, 2010, Mr. Koltun was arraigned in Newburgh City Court. (Decision and Order After Hearing in <u>People v. Koltun</u>, No. 2010-778 (Orange County Ct. Oct. 18, 2011) ("Oct. 18 Decision"), attached as Exh. C to Declaration of Carol C. Pierce dated June 7, 2013, at 6).[2] He was charged with two counts of murder in the first degree in violation of New York Penal Law § 125.27 and other related charges (the "criminal action"). (Oct. 18 Decision at 2). The plaintiff contends that the OCDA used illegally obtained evidence to prosecute him. (Koltun Aff., ¶ 13).

James Winslow was appointed as Mr. Koltun's counsel on December 2, 2010, and served in that capacity in the criminal action until October 22, 2011 (Affidavit of Victor Koltun Regarding

---

[2] The pages of the October 18 Decision are not numbered so I refer to the page numbers generated by the Case Management/Electronic Case Filing (CM/ECF) system.

James Winslow dated March 5, 2013 ("Koltun Aff. re Winslow"), attached to Compl., ¶ 2(A)), when he was replaced by Paul Brite (Affidavit of Victor Koltun Regarding Paul Brite dated March 5, 2013 ("Koltun Aff. re Brite"), attached to Compl., ¶ 2(C)).

The criminal action is still pending. (New York State Unified Court System, Case Details -- Summary for <u>People v. Koltun</u>, Case No. 00778-2010, https://iapps.courts.state.ny.us/webcrim_attorney/ CaseIdentifierSearch (search for case number "00778-2010"; then follow "00778-2010" hyperlink) (last visited July 17, 2013) ("NYS Case Summary")).

<u>Discussion</u>

A.   <u>Legal Standard</u>

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam; <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 110-11 (2d Cir. 2010). A complaint need not contain detailed factual allegations, but it must contain more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007)). Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure. <u>Id.</u> at 679 (citing Fed. R.

Civ. P. 8(a)(2)).

Pro se complaints are held to less stringent standards than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008) (citing Erickson, 551 U.S. at 94). In fact, pleadings of a pro se party should be read "'to raise the strongest arguments that they suggest.'" Kevilly v. New York, 410 F. App'x 371, 374 (2d Cir. 2010) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)). Even after Iqbal, which imposed heightened pleading standards for all complaints, pro se complaints are to be liberally construed. See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements. See Rodriquez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997); accord Leak v. Schriro, Nos. 11 Civ. 8023, 12 Civ. 681, 2013 WL 1234945, at *2 (S.D.N.Y. Feb. 20, 2013).

    B.  Section 1983

    Section 1983 provides that

    Every person who, under color of any statute, ordinance,
    regulation, custom, or usage, of any State . . .
    subjects, or causes to be subjected, any citizen of the
    United States . . . the deprivation of any rights,
    privileges, or immunities secured by the Constitution and
    laws, shall be liable to the party injured[.]

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979); see Patterson v. County of

5

Oneida, 375 F.3d 206, 225 (2d cir. 2004). To state a claim under § 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." Castilla v. City of New York, No. 09 Civ. 5446, 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); see Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010).

 C. Section 1985

 To state a conspiracy claim under § 1985(3), a plaintiff must allege

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Robinson v. Allstate Insurance Co., 508 F. App'x 7, 9 (2d Cir. 2013) (quoting United Brotherhood of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828-29 (1983)) (internal quotation marks omitted). The plaintiff "'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (quoting Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)); see Kiryas Joel Alliance v. Village of Kiryas Joel, 495 F. App'x 183, 190 (2d Cir. 2012) (noting vague and conclusory allegations that defendants entered into unlawful agreement is insufficient). Further, the "conspiracy must also be

motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007) (internal quotation marks omitted).

    D.   <u>James Winslow and Paul Brite</u>

The plaintiff alleges that his court-appointed attorneys, James Winslow and Paul Brite, failed to effectively represent him in the criminal action against him in Orange County Court. (Koltun Aff. re Winslow, ¶ 2; Koltun Aff. re Brite, ¶ 2). "[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983." Rodriquez v. Weprin, 116 F.3d 62, 65-66 (2d Cir. 1997); see Sash v. Rosahn, 450 F. App'x 42, 43 (2d Cir. 2011) (holding that "court-appointed criminal defense attorney does not act under color of state law when representing a client"); Fisk v. Letterman, 401 F. Supp. 2d 362, 378 (S.D.N.Y. 2005) ("Courts have clearly and consistently held that court-appointed attorneys do not act under color of state law by virtue of their appointment."). Accordingly, Mr. Winslow and Mr. Brite are not state actors subject to liability under Section 1983.

Mr. Koltun also contends that Mr. Winslow and Mr. Brite acted in concert with "'[s]tate' actors" in a "conspiracy motivated by anti-Semit[ism]." (Koltun Aff. re Winslow, ¶¶ 2, 3, 5, 9; Koltun Aff. re Brite, ¶¶ 2, 3, 5, 9). However, he has not alleged any facts that plausibly suggest that either Mr. Brite or Mr. Winslow

was engaged in such a conspiracy.  He has not asserted that either defendant entered into any agreement with any other defendant to achieve an unlawful end.  See, e.g., Kiryas Joel Alliance, 495 F. App'x at 190 (vague and conclusory allegations that defendants entered into unlawful agreement do not suffice to state valid conspiracy claim under § 1985(3)); Gyadu v. Hartford Insurance Co., 197 F.3d 590, 591 (2d Cir. 1999) (per curiam) ("[A] complaint containing only conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." (internal quotation marks omitted)); Segreto v. Town of Islip, No. 12 CV 1961, 2013 WL 572435, at *12 (E.D.N.Y. Feb. 12, 2013) (dismissing complaint that "sets forth only vague and conclusory allegations regarding any alleged agreement").  Accordingly, I recommend dismissing the conspiracy claims against Mr. Winslow and Mr. Brite.

The plaintiff also appears to allege state law claims of negligence and legal malpractice against Mr. Winslow and Mr. Brite. (Koltun Aff. re Winslow, ¶ 2(E); Koltun Aff. re Brite ¶ 2(F)). "'In most circumstances, a district court should decline supplemental jurisdiction if all federal claims have been dismissed at the pleading stage.'" Haynes v. Zaporowski, No. 11-0228, 2013 WL 1296486, at *3 (2d Cir. April 2, 2013) (quoting Lerner v. Fleet Bank, N.A., 318 F.3d 113, 130 (2d Cir. 2003)); see also Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the

pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims."); McGugan v. Aldana-Bernier, No. 11 CV 342, 2012 WL 1514777, at *8 (E.D.N.Y. April 30, 2012) (declining to exercise supplement jurisdiction over plaintiff's state law claims against three defendants because "plaintiff's federal claims against [those defendants] must be dismissed . . . [and thus] the basis for the Court's original jurisdiction has been negated with respect to [those] defendants"). In light of my recommendation that the plaintiff's federal claims against Mr. Winslow and Mr. Brite be dismissed, I recommend that the court decline to exercise jurisdiction over the plaintiff's state law claims.

    E.   Francis D. Phillips, II and Garry Cooper

Mr. Phillips and Mr. Cooper (the "OCDA defendants") argue that (1) injunctive relief is barred by the Younger doctrine; (2) the Rooker-Feldman doctrine deprives this Court subject matter jurisdiction over the plaintiff's claims; (3) they have absolute immunity from suit; and (4) the complaint fails to state a claim for relief. (Memorandum of Law in Support of Defendants' [sic] Francis D. Phillips, II and Garry Cooper's Motion to Dismiss ("OCDA Def. Memo.") at 7-21). I will address each argument in turn.

    1.  Younger Doctrine

"In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held that principles of federalism and comity preclude a district court from interfering with pending state criminal proceedings

'except in very unusual situations . . . .'" <u>Bess v. Spitzer</u>, 459 F. Supp. 2d 191, 203 (E.D.N.Y. 2006) (quoting <u>Samuels v. Mackell</u>, 401 U.S. 66, 69 (1971)).  This doctrine is based on the recognition that state courts ordinarily provide "an adequate forum for the vindication of federal constitutional rights, and so due deference ought to be paid the principles of comity and federalism." <u>Cullen v. Fliegner</u>, 18 F.3d 96, 103 (2d Cir. 1994) (citations omitted).

Abstention is mandatory when three conditions are present: "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." <u>Diamond "D" Construction Corp. v. McGowan</u>, 282 F.3d 191, 198 (2d Cir. 2002).  Where these requirements are met, the appropriate remedy is dismissal of the federal action seeking to enjoin the state proceeding.  <u>Gibson v. Berryhill</u>, 411 U.S. 564, 577 (1973) ("<u>Younger v. Harris</u> contemplates the outright dismissal of the federal suit, and the presentation of all claims . . . to the state courts."); <u>Peterson v. City of New York</u>, No. 11 Civ. 3141, 2012 WL 75029, at *6 (S.D.N.Y. Jan. 9, 2012) ("When the <u>Younger</u> requirements are met, the doctrine mandates dismissal of claims for both injunctive and declaratory relief.").

All three of the <u>Younger</u> requirements are met here.  The first element is satisfied by the plaintiff's pending criminal prosecution in Orange County.  (NYS Case Summary).  With regard to the second element, "it is axiomatic that a state's interest in the

administration of criminal justice within its borders is an important one." Hansel v. Town Court for Town of Springfield, 56 F.3d 391, 394 (2d Cir. 1995); see Bess, 459 F. Supp. 2d at 204 ("Generally, the second element is satisfied any time a party seeks to enjoin criminal proceeding."). Indeed, Younger itself settled the importance of the state's interest in criminal proceedings." Davis v. Lansing, 851 F.2d 72, 76 (2d Cir. 1988). Third, if convicted, Mr. Koltun can raise his constitutional claims on direct appeal or collateral attack in state court. See id. (noting that if plaintiff is convicted he can raise any constitutional claim on direct appeal in state court); Robinson v. Sposato, No. 11 CV 191, 2012 WL 1965631, at *3 (E.D.N.Y. May 29, 2012) (noting that plaintiff who commenced federal action while state criminal case was pending has "ample opportunity for review of [his] constitutional claim in state court, i.e., by way of direct appeal from, or other collateral attack of, his judgment of conviction in state court").

Nevertheless, even when all three Younger criteria are satisfied, "a federal court may [] intervene in a state proceeding upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" Diamond "D" Construction, 282 F.3d at 198 (quoting Younger, 401 U.S. at 54); see Jackson Hewitt Tax Service Inc. v. Kirkland, 455 F. App'x 16, 17 (2d Cir. 2012) (noting that there are "two tightly defined exceptions to the Younger abstention doctrine, the bad faith exception and the extraordinary circumstances exception." (internal

citation and quotation marks omitted)).  "In order to invoke one of the exceptions to the Younger doctrine, the defendant in a criminal case must make sufficient specific factual allegations which support an inference that the particular exception applies and cannot rely on general claims of misconduct."  Saunders v. Flanagan, 62 F. Supp. 2d 629, 634 (D. Conn. 1999).

Mr. Koltun argues that the OCDA defendants acted in bad faith in bringing the criminal charges against him because they were motivated by "Anti-Semitic Discriminatory Animus" and that he will suffer irreparable harm if he is forced to defend against the criminal charges.  (Letter of Victor Koltun dated June 28, 2013 ("June 28 Letter") at 3-4).

"'[F]or a federal plaintiff to invoke the bad faith exception, the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome[,] . . . [and the] federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive."  Bobrowsky v. Yonkers Courthouse, 777 F. Supp. 2d 692, 710 n.27 (S.D.N.Y. 2011) (alteration in original) (quoting Diamond "D" Construction, 282 F.3d at 199).  "Generally, the subjective bad faith of the prosecuting authority is the gravamen of the exception to Younger abstention."  Kern v. Clark, 331 F.3d 9, 12 (2d Cir. 2003).  The only incident that Mr. Koltun points to in support of his claim that the OCDA defendants brought criminal charges against him on the basis of "ethnic and religious profiling" (June 28 Letter at 3-4) is that the OCDA defendants

12

purportedly allowed the police to question him on Sabbath when he was unable to contact his attorney by telephone (Koltun Aff., ¶¶ 14-16).  This is insufficient to suggest that the prosecution was brought in bad faith.  See Younger, 401 U.S. at 49.  Moreover, as discussed, if Mr. Koltun is convicted, he will have the opportunity to appeal to higher state courts and present his constitutional claims.  "'Where such state remedies are available, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'" Bobrowsky, 777 F. Supp. 2d at 710 n.27 (quoting Diamond "D" Construction, 282 F.3d at 202) (second set of internal quotation marks omitted).

The plaintiff also asserts that he will suffer irreparable harm if this Court does not intervene in the ongoing state criminal case.  (June 28 Letter at 3-4).  "[T]he 'cost, anxiety, and inconvenience of having to defend against a single criminal prosecution' [i]s not the type of injury that could justify federal inference."  Huffman v. Pursue, Ltd., 420 U.S. 592, 601-02 (1975) (quoting Younger, 401 U.S. at 46); see Bradley v. Lawlor, No. 3:08cv750, 2008 WL 2324125, at *1 (D. Conn. June 2, 2008) (citing Younger, 401 U.S. at 46).

Accordingly, to the extent that the plaintiff seeks injunctive or declaratory relief, his claims for relief should be dismissed. See Kirschner v. Klemmns, 225 F.3d 227, 235 (2d Cir. 2000) (noting that Younger doctrine applies to suits for declaratory relief and injunctive relief).  However, Mr. Koltun also seeks monetary

damages,[3] and Younger abstention does not apply to suits for damages.  See Morpurgo v. Incorporated Village of Sag Harbor, 327 F. App'x 284, 285-86 (2d Cir. 2009) ("[W]e have held that 'application of the Younger doctrine is inappropriate where the litigant seeks money damages for an alleged violation of § 1983.'" (quoting Rivers v. McLeod, 252 F.3d 99, 101-02 (2d Cir. 2001)); Diamond "D" Construction, 282 F.3d at 196 n.2 ("[I]t [is] well established that Younger abstention is inappropriate on a claim for money damages.").  Rather than dismissing damage claims, a court may stay the federal action pending resolution of the state criminal proceeding.[4]  See Peterson, 2012 WL 75029, at *6 (citing Kirschner, 225 F.3d at 238-39)).

### 2.   Rooker-Feldman Doctrine

The OCDA defendants argue that this Court lacks subject matter jurisdiction over Mr. Koltun's claims under the Rooker-Feldman doctrine.  (OCDA Def. Memo. at 10).

The Rooker-Feldman doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced

---

[3] In addition, the plaintiff requests that the defendants be "punished criminally" under 18 U.S.C. §§ 241-242, and 247.  (Koltun Aff., ¶ 9).  These are criminal statutes, and there is no private right of action under any of them.  See Storm-Eggink v. Gottfried, 409 F. App'x 426, 427 (2d Cir. 2011) (no private right of action under §§ 241-242); Walthour v. Herron, Civil Action No. 10-01495, 2010 WL 1877704, at *3 (E.D. Pa. May 6, 2010) (no private right of action under §§ 241-242 or 247).

[4] A stay is not necessary here, however, in light of my recommendation below that the claims against the OCDA defendants be dismissed on grounds of absolute immunity and failure to state a claim.

and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). The OCDA defendants contend that the plaintiff is seeking to appeal the April 25, 2011, October 18, 2011, and February 5, 2013 state court decisions rendered in connection with the state criminal action. (OCDA Def. Memo. at 11). However, "[u]nder Rooker-Feldman, 'a party is not complaining of an injury "caused by" a state-court judgment when the exact injury of which the party complains in federal court existed prior in time to the state-court proceedings, and so could not have been "caused by" those proceedings.'" Thomas v. Venditto, __ F. Supp. 2d __, __, 2013 WL 653962, at *8 (E.D.N.Y. 2013) (quoting McKithen v. Brown, 481 F.3d 89, 98 (2d Cir. 2007)). Here, Mr. Koltun alleges that the OCDA defendants violated his constitutional rights by prosecuting him; thus, the injury of which the plaintiff complains existed prior to the decisions of the state court. Thomas, ___ F. Supp. 2d at ___, 2013 WL 653962, at *8 (holding Rocker-Feldman doctrine is inapplicable when plaintiff complains that defendants violated his constitutional rights by filing criminal charges and that denial of motion to dismiss charges "merely ratified" alleged violations). Accordingly, Rooker-Feldman does not bar his claims.

       3.   Absolute Immunity and Failure to State a Claim

Prosecutors are entitled to absolute immunity for "advocatory conduct that is 'intimately associated with the judicial phase of the criminal process.' This immunity attaches to conduct in court,

as well as conduct 'preliminary to the initiation of a prosecution and actions apart from the courtroom.'" Giraldo, 694 F.3d at 165 (quoting Imbler v. Pacthman, 424 U.S. 409, 430 & 431 n.33 (1976)). Prosecutorial immunity also shields an investigator who assists the prosecutor, as well as the district attorney who acts in a supervisory role.  See Jackson v. Seewald, No. 11 Civ. 5826, 2013 WL 149341, at *7 (S.D.N.Y. Jan. 14, 2013).  However, when a prosecutor acts outside his role as an advocate or beyond the scope of his authority, absolute immunity does not apply.  See Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009); Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); Fields v. Soloff, 920 F.2d 1114, 1119 (2d Cir. 1990).  For example, where a prosecutor acts in an investigatory or administrative capacity, absolute immunity is not available.  See Mitchell v. Forsyth, 472 U.S. 511, 513, 520 (1985) (holding Attorney General not absolutely immune for authorizing warrantless wiretap); Buckley, 509 U.S. at 262-63, 276 (denying prosecutors absolute immunity for fabricating evidence "during the early stages of the investigation").

In determining whether a prosecutor enjoys absolute immunity, courts "employ a 'functional' approach, looking at 'the nature of the function performed, not the identity of the actor who performed it.'" Mangiafico v. Blumenthal, 471 F.3d 391, 394 (2d Cir. 2006) (quoting Forrester v. White, 484 U.S. 219, 229 (1988)).  The relevant question is "whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor." Giraldo, 694 F.3d at 166.  As long as

the nature of the action is prosecutorial, "absolute immunity applies to protect the prosecutor even in the face of a complaint's allegation of malicious or corrupt intent behind the acts." Id.; see also Buckley, 509 U.S. at 271 (noting that "harm that the conduct may have caused or the question whether it was lawful" is irrelevant to whether absolute immunity applies); Pinaud v. County of Suffolk, 52 F.3d 1139, 1150 (2d Cir. 1995) ("[T]he extent of [prosecutorial] immunity always depends upon the nature of the activity in question, and not upon how wrongly the particular actors may have performed that activity in a specific instance.").

Insofar as the plaintiff seeks to hold the OCDA defendants liable for their decision to prosecute him, they are absolutely immune from liability. See Hartman v. Moore, 547 U.S. 250, 261-62 (2006) (noting that prosecutor "is absolutely immune from liability for the decision to prosecute"); Imbler, 424 U.S. at 431 (holding prosecutor immune from civil suit in initiating prosecution and presenting state's case). This is the case notwithstanding Mr. Koltun's allegation that the prosecution was based on ethnic and religious discrimination and without probable cause. Bernard v. County of Suffolk, 356 F.3d 495, 504 (2d Cir. 2004) (noting that while "racially invidious or partisan prosecutions, pursued without probable cause, are reprehensible, [] such motives do not necessarily remove conduct from the protection of absolute immunity."). Similarly, Mr. Phillips is absolutely immune from the plaintiff's allegation that he was negligent in supervising his "staff [who] devised a scheme to circumvent the law . . . lead[ing]

to lawless official behavior in furtherance of [a] conspiracy" to prosecute Mr. Koltun.   (Affidavit of Victor Koltun Regarding Francis D. Phillips, II, dated March 5, 2013 ("Koltun Aff. re Phillips"), attached to Compl., ¶ 2(C)); see Van de Kamp, 555 U.S. at 344-46 (holding supervisor entitled to absolute immunity with respect to claim for failure to adequately supervise and train where line prosecutor could claim immunity on underlying claim). Likewise, the plaintiff's "conspiracy to prosecute" claim fails because "when the underlying activity at issue is covered by absolute immunity, the plaintiff derives no benefit from alleging a conspiracy." Pinaud, 52 F.3d at 1148 (internal quotation marks omitted); Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994) (noting that while conspiracy to present false evidence at trial is "certainly not something that is properly within the role of a prosecutor . . . , because '[t]he immunity attaches to his function, not the manner in which he performed it," absolute immunity applies (emphasis in original) (second alteration in original) (quoting Barrett v. United States, 798 F.2d 565, 573 (2d Cir. 1986)).

On the other hand, "actions taken as an investigator enjoy only qualified immunity." Zahrey v. Coffey, 221 F.3d 342, 346 (2d Cir. 2000) (citing Buckley, 509 U.S. at 273).   Thus, "a prosecutor's 'supervision of and interaction with law enforcement agencies in acquiring evidence which might be used in a prosecution' are not covered by absolute immunity, because they are 'actions that are of a police nature.'" Smith v. Schweiloch, No. 12 Civ. 3253, 2012 WL 2277687, at *2 (S.D.N.Y. June 18, 2012)

(quoting <u>Barbera v. Smith</u>, 836 F.2d 96, 100 (2d Cir. 1987));
<u>Carbajal v. County of Nassau</u>, 271 F. Supp. 2d 415, 421 (E.D.N.Y.
2003) ("[W]hen a prosecutor supervises, conducts, or assists in the
investigation of a crime . . . . -- that is, when he performs
functions normally associated with a police investigation -- he
loses his absolute protection from liability." (internal quotation
marks omitted)).

Mr. Koltun alleges that the November 6, 2010, incident with
the police was conducted "under direct and or [sic] implied
direction of the Orange County District Attorney[']s office acting
in prosecutorial and investigative composite [sic]." (Koltun Aff.,
¶¶ 13-14).   However, "[c]onclusory allegations that a prosecutor
acted in an investigative fashion by directing unconstitutional
police conduct are insufficient to state a claim." <u>Smith</u>, 2012 WL
2277687, at *2.   There is no allegation, for example, that Mr.
Cooper was present or participated in any aspect of the November 6
incident.  <u>See</u> <u>Spavone v. New York State Department of Correctional
Services</u>, ___ F.3d ___, ___, 2013 WL 3064853, at *7 (2d Cir. 2013)
("It is well settled in this Circuit that personal involvement of
defendants in alleged constitutional deprivations is a prerequisite
to an award of damages under § 1983." (internal quotation marks
omitted)); <u>Gaston v. Coughlin</u>, 249 F.3d 156, 166 (2d Cir. 2001)
(affirming dismissal of § 1983 claims against defendants who were
not present during alleged constitutional violations).

Similarly, the plaintiff does not contend that Mr. Phillips
personally participated in the November 6 incident.   Rather, he

asserts that Mr. Phillips is responsible because he failed to supervise the police and to implement policies to prevent the alleged constitutional violations. (Koltun Aff. re Phillips, ¶ 2(D)-(E)). However, a district attorney does not normally have a role in police training, and the plaintiff has not alleged that any OCDA staff were involved in the November 6 incident.

Finally, to the extent that Mr. Koltun asserts claims against the OCDA defendants in their official capacities, they are barred by the Eleventh Amendment. See Rodriquez, 116 F.3d at 66 (holding Eleventh Amendment bars claims against district attorney defendants sued in their official capacities); Schnitter v. City of Rochester, __ F. Supp. 2d __, __, 2013 WL 821189, at *5 (W.D.N.Y. 2013).

Accordingly, I recommend dismissing the complaint against the OCDA defendants.

Conclusion

For the foregoing reasons, I recommend that the motions of Mr. Brite (Docket no. 17), Mr Winslow (Docket no. 29), and the OCDA defendants (Docket no. 39) be granted. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Paul A. Crotty, Room 735, 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely

objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           July 19, 2013

Copies mailed this date to:

Victor Koltun
2285 Bragg St.
Apt. #4E
Brooklyn, NY 11229

Douglas S. Langholz, Esq.
Morgan Melhuish Abrutyn
39 Broadway, Suite 1701
New York, NY 10006

David L. Posner, Esq.
McCabe & Mack LLP
63 Washington Street, P.O. Box 509
Poughkeepsie, NY 12602

Ronald W. Weiner, Esq.
Steinberg & Cavaliere, LLP
50 Main St., Suite 501
White Plains, NY 10606

Carol C. Pierce, Esq.
Senior Assistant County Attorney
15 Matthews St., Suite 305
Goshen, NY 10924