UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
VICTOR KOLTUN,                        : 13 Civ. 1612 (PAC) (JCF)
                                      :
          Plaintiff,                  :        REPORT AND
                                      :    RECOMMENDATION
     - against -                      :
                                      :
JEFFREY BERRY, B. HAROLD RAMSEY,      :
AARON WEAVER, THOMAS NAFFY, JOSEPH    :
CORTES, RUDY SIMMONS, MICHAEL         :
FERRARA, JOSEPH D'AMICO, FRANCIS D.   :
PHILLIPS II, GARRY COOPER, JAMES      :
WINSLOW and PAUL BRITE, in their      :
individual and official capacities,   :
                                      :
          Defendants.                 :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:

        Victor Koltun brings this action pro se under 42 U.S.C. §§

1983 and 1985(3) against officers of the Newburgh Police Department

and the New York State Police Department, as well as his former

court appointed counsel, employees of the Orange County District

Attorney's Office, and two state court judges.  Mr. Koltun alleges

numerous constitutional violations in connection with his arrest

and ongoing state court criminal prosecution.  I previously filed

Reports and Recommendations recommending dismissal of Mr. Koltun's

claims against his former counsel and the District Attorney's

Office employees, Koltun v. Berry, No. 13 Civ. 1612, 2013 WL

3816603 (S.D.N.Y. July 19, 2013), as well as dismissal of his

claims against the state judges, the Honorable Jeffery G. Berry and

the Honorable B. Harold Ramsey, <u>Koltun v. Berry</u>, No. 13 Civ. 1612, 2013 WL 3816611 (S.D.N.Y. July 19, 2013).

The Newburgh and New York State police officers now move for dismissal of the claims against them.  For the following reasons, I recommend that the motions be granted but that the plaintiff be given leave to file an amended complaint.

<u>Background</u>

This case arises out of events leading to a state criminal prosecution for double homicide.  The facts, as gleaned from the complaint, its attached affidavits, and matters of which I take judicial notice, are as follows.

On Saturday, November 6, 2010, Newburgh police officers arrived at Mr. Koltun's house to question him about the murders of Frank and Gerald Piscopo, a former police officer and his nephew. (Affidavit of Victor Koltun dated March 5, 2013 ("Koltun Weaver Aff."), attached to Compl., ¶¶ 14-15; Decision and Order After Hearing in <u>People v. Koltun</u>, No. 2010-778 (Orange County Ct. Oct. 18, 2011)("Oct. 18 Decision"), attached as Exh. F to Declaration of David L. Posner dated July 10, 2013, at 2).[1]  Mr. Koltun is an

_____

[1] The substance of Mr. Koltun's complaint is contained not in the complaint itself, but in attached affidavits outlining his claims against individual defendants.  The affidavits naming defendants Weaver, Nafey, Cortes, and Simmons contain only one material difference -- the Cortes and Simmons affidavits omit reference to the November 6, 2010 questioning in ¶ 2 but include it

"ultra-orthodox Jewish person and a 'Rabbi'" who observes Sabbath on Saturdays, as does his attorney.  (Koltun Weaver Aff., ¶¶ 14-15).  The plaintiff informed the police that because of his religious faith, he was unable to call his attorney.  He told them, "I do not wish to answer any questions without my attorney," "I do not wish to waive my constitutional right to counsel," and "I wish to speak to my attorney first before I speak with you."  (Koltun Weaver Aff., ¶ 15).  He suggested that, instead, he would contact the police after sundown.  (Koltun Weaver Aff., ¶ 15).

Mr. Koltun's complaint states that police then "applied psychological pressure to stop [a] religious service" and "lured" him to the police station by emphasizing they wanted him to "just look at [a] few pictures and not answer any questions without [his] attorney."  (Koltun Weaver Aff., ¶ 16).  Once at the station, police "attempted to coerce [a] confession."  (Koltun Weaver Aff., ¶ 16).

Mr. Koltun was arrested by Newburgh police on December 1, 2010, and arraigned in state court.  (Oct. 18 Decision at 4).  He was charged with two counts of murder in the first degree in violation of New York Penal Law § 125.27 and other related charges.  (Oct. 18 Decision at 1).  During a subsequent grand jury

---

in ¶¶ 14-15.  The affidavits naming defendants Ferrara and D'Amico are substantively identical.

presentation and other proceedings, Officers Weaver, Nafey, Cortes, and Simmons allegedly perjured themselves when testifying against Mr. Koltun. (Koltun Weaver Aff., ¶ 2; Koltun Nafey Aff., ¶ 2; Koltun Cortes Aff., ¶ 2; Koltun Simmons Aff., ¶ 2).  Mr. Koltun further alleges that the November 6, 2010 questioning, his arrest, and the subsequent perjury were motivated by an anti-Semitic conspiracy.  (Koltun Weaver Aff., ¶ 3).

The criminal action against Mr. Koltun is still pending. (New York State Unified Court System, Case Details -- Summary for People v. Koltun, Case No. 00778-2010, https://iapps.courts.state.ny.us/webcrim_attorney/ CaseIdentifierSearch (search for case number "00778-2010"; then follow "00778-2010" hyperlink) (last visited Oct. 22, 2013) ("NYS Case Summary")).

Discussion

    A. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.  Kassner v. 2nd Avenue Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).  A complaint need not make "'detailed factual allegations,'" but it must contain more than mere "'labels and conclusions'" or "'a formulaic

recitation of the elements of a cause of action.'"   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)).   It must tender more than "'naked assertion[s]' devoid of 'further factual enhancement.'"   Id. (alteration in original) (quoting Twombly, 550 U.S. at 555). Moreover, courts "accept[] as true only factual allegations, and do[] not accept as true allegations stating only legal conclusions."   Braxton v. Nichols, No. 08 Civ. 8568, 2010 WL 1010001, at *1 (S.D.N.Y. March 18, 2010) (quoting Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009)).   Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the minimum standard.   Iqbal, 556 U.S. at 678.   In ruling on a motion to dismiss, the court's task "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"   GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)).

Pro se complaints are held to less stringent standards than those drafted by lawyers.   Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also McKeown v. New York State Commission on Judicial

Conduct, 377 F. App'x 121, 122 (2d Cir. 2010).  In fact, pleadings of a pro se party should be read "'to raise the strongest arguments that they suggest.'"  Kevilly v. New York, 410 F. App'x 371, 374 (2d Cir. 2010) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).  Even after Iqbal, which imposed heightened pleading standards for all complaints, pro se complaints are to be liberally construed.   See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).  Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements. See Rodriquez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997); accord Leak v. Schriro, Nos. 11 Civ. 8023, 12 Civ. 681, 2013 WL 1234945, at *2 (S.D.N.Y. Feb. 20, 2013).

The Second Circuit has held that a pro se litigant should be afforded at least one opportunity to "amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint [will] succeed in stating a claim." Gomez v. USAA Federal Savings Bank, 171 F.3d 794, 796 (2d Cir. 1990) (per curiam)); see also Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991) (noting that pro se litigants should be granted at least one opportunity to amend a complaint "when a liberal reading of the complaint gives any indication that a valid claim might be stated."). Where a pro se litigant brings a civil rights action,

he should be afforded leave to amend his complaint "fairly freely." Ellis v. Guarino, No. 03 Civ. 6562, 2004 WL 1879834, at *13 (S.D.N.Y. Aug. 24, 2004) (internal quotation marks omitted).

When ruling on a Rule 12(b)(6) motion to dismiss, the court considers the "facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." Field Day, LLC v. County of Suffolk, 463 F.3d 167, 192 (2d Cir. 2006) (internal quotation marks omitted). Courts also "routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings." Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991) (alteration in original). Specifically, I take judicial notice of the New York State prosecution of Mr. Koltun, which is a matter of public record, including the indictment and court hearings. See Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012) (taking judicial notice of state criminal prosecution); Carrion v. Singh, No. 12 CV 360, 2013 WL 639040, at *4 (E.D.N.Y. Feb. 21, 2013) (noting that in adjudicating on motion to dismiss, court may take judicial notice of state court orders, and collecting cases); Hayes v. Perotta, 751 F. Supp. 2d 597, 599 (S.D.N.Y. 2010) (taking judicial notice of court proceedings, including transcripts and judicial opinions).

B. <u>Overview of the Plaintiff's Claims</u>

Construed liberally, the plaintiff's complaint alleges (1) pursuant to § 1983, violations of his First, Fourth, Fifth, and Fourteenth Amendment rights based on the actions of Officers Weaver, Nafey, Cortes, and Simmons; (2) claims of supervisory and municipal liability; and (3) pursuant to § 1985(3), a conspiracy to deprive Mr. Koltun of his constitutional rights. (Koltun Weaver Aff., ¶¶ 5-6, 13-16).  All the defendants contend that abstention doctrine bars the court from granting an injunction, and that Mr. Koltun has, in any event, failed to state a claim.  Officers D'Amico and Simmons also argue that the <u>Rooker-Feldman</u> doctrine operates as a jurisdictional bar to all of the plaintiff's claims.

C. <u>Rooker-Feldman</u>

<u>Rooker-Feldman</u> directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced.

<u>McKithen v. Brown</u>, 626 F.3d 143, 154 (2d Cir. 2010).  "Under <u>Rooker-Feldman</u>, 'a party is not complaining of an injury "caused by" a state-court judgment when the exact injury of which the party complains in federal court existed prior in time to the state-court proceedings, and so could not have been "caused by" those proceedings.'"  <u>Thomas v. Venditto</u>, 925 F. Supp. 2d 352, 362

(E.D.N.Y. 2013) (quoting McKithen v. Brown, 481 F.3d 89, 98 (2d Cir. 2007)).  Here, Mr. Koltun alleges that violations of his constitutional rights occurred during the investigatory phase, prior to the initiation of the criminal case.  See Thomas, 925 F. Supp. 2d at 362-63 (holding Rocker-Feldman doctrine inapplicable when plaintiff complains that defendants violated his constitutional rights by filing criminal charges and that denial of motion to dismiss charges "merely ratified" alleged violations). Accordingly, Rooker-Feldman is not a threshold bar to the plaintiff's claims.

    B. Abstention

Younger abstention deprives federal courts of jurisdiction over federal constitutional claims seeking injunctions against ongoing state proceedings.  Diamond "D" Construction Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) (citing Younger v. Harris, 401 U.S. 37, 43-44 (1971)).  The doctrine is grounded in notions of comity, and embodies the "fundamental policy against federal interference with state criminal prosecutions." Younger, 401 U.S. at 46; see Spargo v. New York Commission on Judicial Conduct, 351 F.3d 65, 74-75 (2d Cir. 2003).  Younger abstention is mandatory where: "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate

9

opportunity for judicial review of the federal constitutional claims." Diamond "D" Construction, 282 F.3d at 198 (citing Grieve v. Tamerin, 269 F.3d 149, 152 (2d Cir. 2001)); Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 100-01 (2d Cir. 2004). Younger applies only to claims seeking injunctions, not those seeking money damages. See Morpurgo v. Incorporated Village of Sag Harbor, 327 F. App'x 284, 285-86 (2d Cir. 2009) ("[W]e have held that application of the Younger doctrine is inappropriate where the litigant seeks money damages for an alleged violation of § 1983." (internal quotation marks omitted)); Kirschner v. Klemons, 225 F.3d 227, 238 (2d Cir. 2000) ("When money damages, as opposed to equitable relief, are sought, it is less likely that unacceptable interference with the ongoing state proceeding, the evil against which Younger seeks to guard, would result from the federal court's exercise of jurisdiction.").

The injunctive claims at hand meet all three conditions. First, Mr. Koltun is currently facing a criminal trial in state court. Second, a pending state criminal proceeding is the very type of proceeding addressed in Younger itself. "[I]t is axiomatic that a state's interest in the administration of criminal justice within its borders is an important one." Hansel v. Town Court for Town of Springfield, 56 F.3d 391, 393 (2d Cir. 1995); see also Rolle v. McCarthy, No. 02 CV 4398, 2005 WL 5885366, at *4 (E.D.N.Y. June 21,

2005) ("The administration of criminal justice in the state courts of New York is undoubtedly an important state interest . . . ."). Third, state court will provide Mr. Koltun with an adequate opportunity for judicial review of his federal constitutional claims. Any "would-be plaintiff who has been subjected to a state proceeding which he seeks to challenge in federal court must first exhaust all available state appellate remedies." Kirschner, 225 F.3d at 234 (citing Huffman v. Pursue, Ltd., 420 U.S. 592, 608 (1975)); see Spargo, 351 F.3d at 77-78 ("[U]nder Younger, any uncertainties as to the scope of state proceedings or the availability of state remedies are generally resolved in favor of abstention.").

There are two narrow exceptions to Younger abstention, where the plaintiff can prove either bad faith or extraordinary circumstances. Diamond "D" Construction, 282 F.3d at 198-202; Kirschner, 225 F.3d at 235-36. For the bad faith exception to apply, the plaintiff must demonstrate that the "'state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive.'" Bobrowsky v. Yonkers Courthouse, 777 F. Supp. 2d 692, 710 n.27 (S.D.N.Y. 2011) (quoting Diamond "D" Construction, 282 F.3d at 199). A plaintiff must articulate plausible facts supporting the existence of bad faith or bias. Kirschner, 225 F.3d at 236 ("Mere conclusory allegations of bias

11

are insufficient to overcome <u>Younger</u> -- a plaintiff seeking to avoid <u>Younger</u> must affirmatively demonstrate the justification for application of an exception."). The extraordinary circumstances exception, meanwhile, applies where there is "no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation" and "great and immediate" harm will result without federal intervention. <u>Diamond "D" Construction</u>, 282 F.3d at 201; <u>see also</u> <u>Kugler v. Helfant</u>, 421 U.S. 117, 124-25 (1975). As <u>Younger</u> itself establishes, "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, [cannot] by themselves be considered 'irreparable' in the special legal sense of that term." <u>Younger</u>, 401 U.S. at 46; <u>see also</u> <u>Davis v. Lansing</u>, 851 F.2d 72, 77 (2d Cir. 1998) ("The burden of defending a criminal prosecution is, of course, insufficient without more to constitute irreparable harm."). Here, Mr. Koltun has failed to proffer plausible evidence of malice or bias, nor has he shown extraordinary circumstances.

"When <u>Younger</u> applies, abstention is mandatory, and its application deprives the court of subject matter jurisdiction in the matter." <u>Brims v. Ramapo Police Dep't</u>, No. 11 Civ. 0712, 2011 WL 7101233, at *6 (S.D.N.Y. Dec. 23, 2011) (citing <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800, 816 n.22 (1976)). Mr. Koltun's claims for an injunction against his

ongoing criminal case should therefore be dismissed.

C. Eleventh Amendment Immunity

Although the complaint alleges claims against defendants in both their individual and official capacities, all damage claims against State police officers D'Amico and Simmons in their official capacities are barred by the Eleventh Amendment. Defendants D'Amico and Simmons are officers of the New York State Police, a governmental unit of the State of New York. See Seitz v. DeQuarto, 777 F. Supp. 2d 492, 499 (S.D.N.Y. 2011) (dismissing official capacity claims against New York State Police investigators). Absent waiver by the state or congressional action overriding the protection, state employees in their official capacities are immune from suits seeking money damages. See Will v. Michigan Department of State Police, 491 U.S. 58, 66 (1989). Section 1983 does not abrogate Eleventh Amendment immunity. See Kentucky v. Graham, 473 U.S. 159, 169 (1985); Cruz v. Gomez, 202 F.3d 593, 595 n.2 (2d Cir. 2000); Dube v. State University of New York, 900 F.2d 587, 594 (2d Cir. 1990). Thus, I recommend that Mr. Koltun's claims against Officers D'Amico and Simmons in their official capacities be dismissed for lack of subject matter jurisdiction.

D. Claims Against Officer Defendants Individually

1. Questioning on November 6, 2010

The complaint alleges that officers Weaver, Nafey, Cortes, and

13

Simmons violated the plaintiff's rights to free exercise of religion when they arrived at his house on Saturday, which the plaintiff observes as the Sabbath, to question him. (Koltun Weaver Aff., ¶¶ 14-16). "Where a claim is for violation of the Free Exercise Clause, a plaintiff must demonstrate that the official conduct at issue operated coercively against plaintiff 'in the practice of his religion.'" New Creation Fellowship of Buffalo v. Town of Cheektowaga, No. 99 CV 460A, 2004 WL 1498190, at *14 (W.D.N.Y. July 2, 2004) (quoting Harris v. McRae, 448 U.S. 297, 321 (1980)), aff'd 164 F. App'x 5 (2d Cir. 2005). The Second Circuit recently considered a free exercise claim where the defendant alleged that the trial court presented him with the coercive choice of either attending religious services or appearing at trial. Eubanks v. Lempke, 479 F. App'x 363, 366 (2d Cir. 2012), cert. denied, __ U.S. __, 133 S. Ct. 286 (2012). The court declined to address "the weighty question, whether, as a general matter, a trial court is obligated to make an effort to accommodate a criminal defendant's religious obligations during a trial." Id. at 367. It instead found no coercion because the defendant did not initially object to the decision to proceed with trial on Fridays. Id. at 367.

Here, Mr. Koltun alleges that police officers "lured" him to the police station on a Saturday, disrupting his religious

observation.  (Koltun Weaver Aff., ¶¶ 14-16).  Upon a plain reading of the complaint, it appears that Mr. Koltun ultimately chose to accompany the police for questioning.  "Consent under false pretenses, absent outright fraud, such as where a police officer falsely claims to have a warrant in order to gain entry, is still consent."  Dzwonczyk v. Syracuse City Police Department, 710 F. Supp. 2d 248, 265 (N.D.N.Y. 2008).  Mr. Koltun was free to decline to accompany the police.  Therefore, the First Amendment free exercise claims against Officers Weaver, Nafey, Cortes, and Simmons should be dismissed.

The plaintiff also alleges that by questioning him on a Saturday, his day of Sabbath, police "obstructed and blocked" him from contacting his attorney.[2]  (Koltun Weaver Aff., ¶ 15).  The Fifth Amendment right to counsel protects a suspect's expressed desire to communicate with the police only through counsel.  See generally Miranda v. Arizona, 384 U.S. 436, 467-71 (1966).  "[E]ven when an individual is not in custody, because of 'the unique role

---

[2] Although Mr. Koltun references the Sixth Amendment (Koltun Weaver Aff., ¶ 15), his claims of denial of counsel sound instead in the Fifth Amendment.  "It is well-established that the Sixth Amendment right to counsel 'applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty.'"  Lindsey v. Butler, No. 11 Civ. 9102, 2013 WL 3186488, at *4 (S.D.N.Y. June 24, 2013) (quoting Rothgery v. Gillespie County, 554 U.S. 191, 194 (2008)).  The alleged violations of right to counsel alleged here took place before the plaintiff was formally charged.

the lawyer plays in the adversary system of criminal justice in this country,' a request for a lawyer in response to law enforcement questioning suffices to put an officer on notice that the individual means to invoke the privilege." <u>United States v. Okatan</u>, 728 F.3d 111, 119 (2d Cir. 2013) (quoting <u>Fare v. Michael C.</u>, 442 U.S. 707, 719 (1979)). Mr. Koltun, prior to accompanying the police to the station, stated that he wanted to speak to his attorney before answering any questions. (Koltun Weaver Aff., ¶ 15). Because he was not able to communicate with his lawyer, who also observes Sabbath and could not be contacted by telephone, he claims his right to counsel was violated. (Koltun Weaver Aff., ¶ 15). The Fifth Amendment protection of the right to counsel, however, affords suspects the right to have an attorney present, not necessarily their particular attorney of choice. <u>See In re Terrorist Bombings of U.S. Embassies in East Africa</u>, 552 F.3d 177, 207 (2d Cir. 2008) ("<u>Miranda</u> does not require that attorneys be producible on call, but only that the suspect be informed . . . that he has the right to an attorney before and during questioning, and that an attorney would be appointed for him if he could not afford one." (alteration in original) (citing <u>Duckworth v. Eagan</u>, 492 U.S. 195, 204 (1989))). It is the Sixth Amendment that protects an individual's right to counsel of choice -- a right that is nonetheless "circumscribed in several important respects,"

United States v. Gonzalez–Lopez, 548 U.S. 140, 144, 151-52 (2006) -- but Mr. Koltun's Sixth Amendment rights had not yet attached. There is no cognizable violation of the Fifth Amendment right to counsel where the plaintiff's faith prevented him from contacting his particular lawyer for a period of several hours.

To the extent that Mr. Koltun's complaint alleges a Fifth Amendment violation based on solely on any failure to provide Miranda warnings prior to the questioning, no constitutional violation exists.  See Chavez v. Martinez, 538 U.S. 760, 772-73 (2003) (plurality opinion)(failure to read Miranda warnings to suspect did not violate constitutional rights and cannot be grounds for § 1983 action); Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003) ("Miranda violations, absent coercion, do not rise to the level of constitutional violations actionable under § 1983. The appropriate remedy for violations of Miranda rights is exclusion of the evidence at trial." (citation omitted)); Lucas v. Meier, No. 11 Civ. 0872, 2013 WL 1309622, at *10 (S.D.N.Y. March 30, 2013); Myers v. County of Nassau, 825 F. Supp. 2d 359, 367 (E.D.N.Y. 2011).  The Fifth Amendment's protection against self-incrimination provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  While the protection against self-incrimination may be invoked in a variety of settings, a constitutional violation requires the "use of the

17

compelled statements in a criminal case against the witness."
Chavez, 538 U.S. at 769 (plurality opinion). "This is because the
compulsion of incriminating statements is not a violation: it is
admitting the compelled evidence at trial that constitutes a
violation." United States v. Gilkeson, 431 F. Supp. 2d 270, 287
(N.D.N.Y. 2006) (emphasis in original). Police interrogation does
not constitute use in a criminal case. Chavez, 538 U.S. at 766
(plurality opinion) ("[A] 'criminal case' at the very least
requires the initiation of legal proceedings.").

If the complaint is instead read to allege constitutional
violations stemming from the use of Mr. Koltun's November 6, 2010
statements in a state court proceeding, this claim is foreclosed by
the Rooker-Feldman doctrine. That doctrine bars "cases brought by
state-court losers complaining of injuries caused by state-court
judgments rendered before the district court proceedings commenced
and inviting district court review and rejection of those
judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544
U.S. 280, 284 (2005). Mr. Koltun challenged the admissibility of
his November 6, 2010 statements in his state court criminal case,
and a state judge rendered a decision. (Oct. 18 Decision). Any
Fifth Amendment violation resulting from the use of these
statements in Mr. Koltun's criminal case is "inextricably
intertwined" with the state court decision finding them admissible.

<u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 415 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 486-87 (1983). A federal court cannot consider such claims.[3] <u>Feldman</u>, 460 U.S. at 486-87.

Mr. Koltun's claims under the Fifth Amendment should be dismissed.

### 2. December 1, 2010 Detention

New York law provides the framework for § 1983 claims for false arrest. <u>See</u> <u>Jenkins v. City of New York</u>, 478 F.3d 76, 84 (2d Cir. 2007); <u>Leogrande v. New York</u>, No. 08 CV 3088, 2013 WL 1283392, at *8 (E.D.N.Y. March 29, 2013) (citing <u>Conway v. Village of Mount Kisco</u>, 750 F.2d 205, 214 (2d Cir. 1984)). "[A] § 1983 claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." <u>Jaegly v. Couch</u>, 439 F.3d 149, 151 (2d Cir. 2006). A "false arrest claim thus survives

_____

[3] Indeed, even if the plaintiff's claim were not barred by <u>Rooker-Feldman</u>, imputing liability to the police officers who allegedly coerced Mr. Koltun's statements would be difficult because the statements were admitted in court. <u>See</u> <u>Higazy v. Templeton</u>, 505 F.3d 161, 180 (2d Cir. 2007) (Jacobs, C.J., concurring) ("Under settled law of this Circuit, the Fifth Amendment violation that flows from a coerced confession transpires only if and when the confession is used in court, and even then, the officer who coerced the confession is liable only if the officer conceals the coercion; absent concealment of the circumstances amounting to coercion, the error of the court in accepting the confession is treated as a superseding cause.").

dismissal if the facts alleged in the complaint support a reasonable inference that [the plaintiff] was arrested without probable cause." Hayward v. City of New York, No. 12 CV 3220, 2013 WL 4775642, at *3 (E.D.N.Y. Sept. 6, 2013) (citing Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002)); see also Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." (internal quotation marks omitted)). Under New York law, a warrantless arrest raises a rebuttable presumption that the arrest is unlawful. See Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010) ("When an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense."); Curry v. City of Syracuse, 316 F.3d 324, 335 (2d Cir. 2003).

In individual affidavits outlining his claims against officers Weaver, Nafey, Cortes, and Simmons, Mr. Koltun alleges that those defendants violated his constitutional rights through his "warrantless detention" on December 1, 2010. (Koltun Weaver Aff., ¶ 2-A; Koltun Nafey Aff., ¶ 2-A; Koltun Cortes Aff., ¶ 2-A; Koltun Simmons Aff., ¶ 2-A). His detention is presumptively unlawful unless probable cause can be determined based upon the complaint.

While probable cause may be determined where "undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable," Jenkins, 478 F.3d at 88, the facts here are disputed.   The plaintiff's subsequent indictment also cannot provide probable cause.   Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (presumption of probable cause created by post-arrest indictment "applies only in causes of action for malicious prosecution and is totally misplaced when applied in false arrest actions." (internal quotation marks and brackets omitted)); Blasini v. City of New York, No. 11 Civ. 3022, 2011 WL 6224605, at *4 (S.D.N.Y. Dec. 14, 2011).

Nonetheless, the complaint's two-word claim of warrantless detention is insufficient, standing alone, to support a claim for false arrest.   A complaint must allege "enough facts to state a claim to relief that is plausible on its face" rather than merely "conceivable."   Twombly, 550 U.S. at 547; see Clay v. County of Clinton, No. 8:10 CV 00239, 2012 WL 4485952, at *11 (N.D.N.Y. Sept. 27, 2012) (finding more than a "formulaic recitation" of the elements of false arrest where additional facts supported the claim).   The individual affidavits, which are identical as to the false arrest claims, also fail to provide indicia of the personal involvement required for all § 1983 claims.   See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006).   However, as Mr. Koltun is a pro

se litigant due special solicitude, he may be able to plead facts supporting his false arrest claim in an amended complaint.  See Gomez, 171 F.3d at 796.  The false arrest claim should therefore be dismissed with leave to amend.

       3. Subsequent State Prosecution

     "A malicious prosecution claim under New York law requires the plaintiff to prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  Jocks, 316 F.3d at 136 (internal quotation marks omitted); see also Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004).  "Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments." Cameron v. City of New York, 598 F.3d 50, 63 (2d Cir. 2010). However, the complaint fails to meet at least two of the requirements for a malicious prosecution claim. As Mr. Koltun's criminal case is still pending, he cannot show termination in his favor.  See, e.g., Manbeck v. Micka, 640 F. Supp. 2d 351, 371 (S.D.N.Y. 2009) (finding a stay in a state court proceeding insufficient to meet the favorable termination requirement). Likewise, "[t]he return of an indictment creates a presumption as to the existence of probable cause," Fulton v. Robinson, 289 F.3d

188, 198 (2d Cir. 2002); Green v. Montgomery, 219 F.3d 52, 60 (2d Cir. 2000), and Mr. Koltun was indicted in state court (Indictment in People v. Koltun, No. 2010-778 (Orange County Ct. Dec 21, 2010) ("Indictment"), attached as Exh. E to Declaration of David L. Posner dated July 10, 2013)).

A plaintiff may rebut the presumption of probable cause by showing fraud or other misconduct, but must do so with more than "mere conjecture and surmise." Savino, 331 F.3d at 72-73 (internal quotation marks omitted).  If unrebutted, the presumption of probable cause is sufficient to block a claim for malicious prosecution.  See Bernard v. United States, 25 F.3d 98, 104 (2d Cir. 1994).  The complaint here refers to perjury connected with the grand jury hearing but provides no particulars. (Koltun Weaver Aff., ¶ 2).  As "the existence of probable cause is a complete defense to a claim of malicious prosecution," the plaintiff's claims for malicious prosecution should be dismissed.  Savino, 331 F.3d at 72.

Mr. Koltun further alleges that perjured testimony offered by Officers Weaver, Nafey, Cortes, and Simmons at the grand jury proceedings and several state court hearings led to deprivation of his liberty.  (Koltun Weaver Aff., ¶ 2; Koltun Nafey Aff., ¶ 2; Koltun Cortes Aff., ¶ 2; Koltun Simmons Aff., ¶ 2).  Law enforcement officials who testify at grand jury proceedings are

23

entitled to absolute immunity.  See <u>Rehberg v. Paulk</u>, __ U.S. __, 132 S. Ct. 1497, 1505-07 (2012); <u>McCaffrey v. City of New York</u>, No. 11 Civ. 1636, 2013 WL 494025, at *4 (S.D.N.Y. Feb. 27, 2013) ("As witnesses before the grand jury or at trial, detectives are entitled to absolute immunity for § 1983 actions based on their testimony."); <u>cf</u>. <u>Briscoe v. LaHue</u>, 460 U.S. 325, 328 n.5 (1983) (holding that police officers who commit perjury during criminal trials are entitled to absolute immunity, but not reaching question of immunity at pretrial proceedings).   The Second Circuit has explicitly extended this immunity to adversarial pretrial hearings. See <u>Daloia v. Rose</u>, 849 F.2d 74, 76 (2d Cir. 1988) (per curiam); <u>Hayes v. County of Sullivan</u>, 853 F. Supp. 2d 400, 422 (S.D.N.Y. 2012).   Thus, the claims against Officers Weaver, Nafey, Cortes, and Simmons for perjury related to their testimony at the grand jury and at pretrial hearings should be dismissed.

### 4. <u>Anti-Semitic Animus</u>

The Equal Protection Clause of the Fourteenth Amendment guarantees "'[the] right to be free from invidious discrimination in statutory classifications and other governmental activity.'" <u>Bernheim v. Litt</u>, 79 F.3d 318, 323 (2d Cir. 1996) (quoting <u>Harris v. McRae</u>, 448 U.S. 297, 322 (1980)).  "A showing that the plaintiff was treated differently compared to others similarly situated" is a "prerequisite" and a "threshold matter" to a selective treatment

claim.  Church of the American Knights of the Ku Klux Klan v. Kerik, 356 F.3d 197, 210 (2d Cir. 2004); see Bishop v. Best Buy, Co., No. 08 Civ. 8427, 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 13, 2010) (dismissing equal protection claim where plaintiff failed to allege any similarly situated individuals who were treated differently); see also MacPherson v. Town of Southampton, 738 F. Supp. 2d 353, 371 (E.D.N.Y. 2010) (dismissing equal protection claim for failure to "identify any comparators or similarly situated entities at all").  While the plaintiff alleges that Officers Weaver, Nafey, Cortes, and Simmons targeted him because of his religious and ethnic background, the complaint refers only to his own experience and not to any similarly situated suspects who were treated differently.  (Koltun Weaver Aff., ¶ 9; Koltun Nafey Aff., ¶ 9; Koltun Cortes Aff., ¶ 9; Koltun Simmons Aff., ¶ 9). Furthermore, the complaint lacks any facts supporting an inference of intentional discrimination.  Where a plaintiff claims discrimination without providing any factual support, these allegations amount to "'nothing more than a formulaic recitation of the elements of a constitutional discrimination claim,'" and dismissal is warranted.  Hayden v. Paterson, 594 F.3d 150, 162 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 678). The claims alleging violations of equal protection should be dismissed.

Finally, the complaint's references to due process under the

25

Fourteenth Amendment are entirely opaque and do not appear to allege anything beyond the claims previously addressed. I recommend that any Fourteenth Amendment due process claims be dismissed. See Bouche v. City of Mount Vernon, No. 11 Civ. 5246, 2012 WL 987592, at *8 (S.D.N.Y. March 23, 2012) (dismissing Fourteenth Amendment substantive due process claims where claim based on events surrounding arrest and prosecution, and better analyzed under the Fourth Amendment).

E. Supervisory Liability

Mr. Koltun's complaint states that Officers Ferrara and D'Amico, as supervisory officials, were "well aware [of and] failed [to] prevent" the constitutional violations allegedly committed by Newburgh and New York State police. (Koltun Ferrara Aff., ¶ 13; Koltun D'Amico Aff., ¶ 13). However, the plaintiff does not provide a sufficient factual basis from which to infer the supervisors' personal involvement. It is well-established that in § 1983 cases, supervisory liability "cannot rest on respondeat superior." Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003); accord Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003). Rather, a defendant must be personally involved in the alleged constitutional violation. See Richardson, 347 F.3d at 435. While direct participation necessarily constitutes personal involvement, a supervisor may also be found liable through "(1) failing to take

26

corrective action; (2) creation of a policy or custom fostering the conduct; (3) grossly negligent supervision, or deliberate indifference to the rights of others." <u>Rolon v. Ward</u>, 345 F. App'x 608, 611 (2d Cir. 2009) (quoting <u>Hayut v. State University of New York</u>, 352 F.3d 733, 753 (2d Cir. 2003)); <u>see also</u> <u>Scott v. Fischer</u>, 616 F.3d 100, 108-09 (2d Cir. 2010). The claims against defendants Ferrara and D'Amico should therefore be dismissed without prejudice to Mr. Koltun amending his complaint to add factual allegations that would support a claim of supervisory liability.

F. <u>Municipal Liability</u>

Mr. Koltun has sued the Newburgh police defendants in both their individual and official capacities. Claims against city police in their official capacity are viewed as claims against the municipality itself. <u>See, e.g.</u>, <u>Graham</u>, 473 U.S. at 165 (holding that suit against officer in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent") (internal quotation marks omitted); <u>Brandon v. Holt</u>, 469 U.S. 464, 471-72 (1985) (official capacity claim against public officer is a claim against the office held by that person); <u>Campbell v. Giuliani</u>, No. 99 CV 2603, 2000 WL 194815, at *2 (E.D.N.Y. Feb. 16, 2000).

Here, the plaintiff's claims of municipal liability fail based on the allegations themselves. For a municipality to be liable

under § 1983 for the actions of its officers, a municipal policy or custom must be the "moving force" behind the constitutional violations at issue. <u>Bryant v. Maffucci</u>, 923 F.2d 979, 986 (2d Cir. 1991) (internal quotation marks omitted); <u>see</u> <u>Jones v. Town of East Haven</u>, 691 F.3d 72, 80 (2d Cir. 2012) (citing <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 690-91 (1978)). Yet, the complaint states that the defendants "violated official and/or implied policy and/or custom" when committing the alleged constitutional violations. (Koltun Weaver Aff., ¶ 17; Koltun Nafey Aff., ¶ 17; Koltun Cortes Aff., ¶ 17). Accordingly, all claims of municipal liability, including claims against the city police officers in their official capacities, should be dismissed.[4]

G. <u>Section 1985 Conspiracy Claims</u>

To state a claim under § 1985(3), a plaintiff must plausibly allege (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is deprived of any right of a citizen of the United States. <u>Brown v. City of Oneonta</u>, 221 F.3d 329, 341 (2d Cir. 2000). The conspiracy must be motivated by a "'class-based, invidious discriminatory animus.'" <u>Thomas v. City</u>

---

[4] As discussed above, the official-capacity claims against the state police officers are barred by the Eleventh Amendment.

28

<u>of New York</u>, No. 12 CV 5061, 2013 WL 3810217, at *5 (E.D.N.Y. July 23, 2013) (quoting <u>Britt v. Garcia</u>, 457 F.3d 264, 270 n.4 (2d Cir. 2006)).

A § 1985(3) conspiracy claim cannot stand "[i]f the claimant has failed to allege deprivation of a federal right." <u>See</u> <u>Guan N. v. New York City Department of Education</u>, No. 11 Civ. 4299, 2013 WL 67604, at *22 (S.D.N.Y. Jan. 7, 2013); <u>Nasca v. County of Suffolk</u>, No. 05 CV 1717, 2008 WL 53247, at *8 n.8 (E.D.N.Y. Jan. 2, 2008) ("Because the Court has found no constitutional violation exists, dismissal of the Section 1985 claim is warranted." (collecting cases)). Mr. Koltun cannot demonstrate that the defendants acted in furtherance of a conspiracy resulting in the deprivation of his federal rights because, as discussed above, Mr. Koltun has not shown that they violated his constitutional rights in the first place.

Even if Mr. Koltun had met this burden, "to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds," not mere "conclusory" allegations. <u>Webb v. Goord</u>, 340 F.3d 105, 110 (2d Cir. 2003); <u>see</u> <u>Kiryas Joel Alliance v. Village of Kiryas Joel</u>, 495 F. App'x 183, 190 (2d Cir. 2012) (noting vague and conclusory allegations that defendants entered into unlawful agreement are insufficient); <u>Williams v. Falkowski</u>, No. 9:11 CV 826, 2013 WL 5423703, at *9

(N.D.N.Y. Sept. 26, 2013) (recommending dismissal of § 1985(3) claim where plaintiff alleged no factual support for conspiracy or underlying discriminatory intent).   The allegation that the defendants "acted in concert" with each other "in furtherance of a[n] [anti-Semitic] conspiracy" is insufficient.  (Koltun Weaver Aff., ¶ 2-D; Koltun Nafey Aff., ¶ 2-D; Koltun Cortes Aff., ¶ 2-D; Koltun Simmons Aff., ¶ 2-D).  Therefore, I recommend that these claims be dismissed.

Conclusion

For the foregoing reasons, I recommend that the motions of the Newburgh Police defendants (Docket no. 60) and the New York State Police defendants (Docket no. 56) be granted and that the plaintiff be given leave to amend his complaint as to the false arrest and associated supervisory liability claims only. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Paul A. Crotty, Room 1350, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE


Dated:     New York, New York
           October 25, 2013

Copies mailed this date to:

Victor Koltun
2285 Bragg St.
Apt. #4E
Brooklyn, NY 11229

Douglas S. Langholz, Esq.
Morgan Melhuish Abrutyn
39 Broadway, Suite 1701
New York, NY 10006

David L. Posner, Esq.
McCabe & Mack LLP
63 Washington Street, P.O. Box 509
Poughkeepsie, NY 12602

Ronald W. Weiner, Esq.
Steinberg & Cavaliere, LLP
50 Main St., Suite 501
White Plains, NY 10606

Carol C. Pierce, Esq.
Senior Assistant County Attorney
15 Matthews St., Suite 305
Goshen, NY 10924

31