UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
VICTOR KOLTUN,                        :   13 Civ. 1612 (PAC) (JCF)
                                      :
            Plaintiff,                :
                                      :
      - against -                     :         REPORT AND
                                      :      RECOMMENDATION
                                      :
JEFFREY BERRY, et al.,                :
                                      :
            Defendants.               :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:

```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED:  11 7 16             │
└─────────────────────────────────┘
```

     Pro se plaintiff Victor Koltun brings this action under 42

U.S.C. §§ 1983 and 1985(3) against his former court-appointed

attorneys, officers of the City of Newburgh Police Department

and the New York State Police, the Orange County Attorney,

employees of the Orange County District Attorney's Office and

the Orange County Sheriff's Office, government officials of the

City of Newburgh, and three New York state court judges.[1]  Mr.

Koltun alleges numerous constitutional violations in connection

with his arrest and criminal prosecution in New York state

court.  All of the defendants now move for dismissal of the

claims against them pursuant to Rules 12(b)(1) and 12(b)(6).[2]

---

[1]   In addition to the specifically named defendants, the
Amended Complaint asserts claims against a host of "John Doe"
and "Jane Doe" defendants, none of whom have been identified or
served.

[2]   The plaintiff's claims against Paul Brite and James
Winslow were previously dismissed.  Koltun v. Berry, No. 13 Civ.

For the reasons that follow, I recommend that the defendants'
motions be granted.

Background

A.   Facts

The facts underlying this case are set forth in detail in
my previous Reports and Recommendations, see Koltun v. Berry,
No. 13 Civ. 1612, 2013 WL 3816603, at *1-2 (S.D.N.Y. July 19,
2013) ("Koltun I"); Koltun v. Berry, No. 13 Civ. 1612, 2013 WL
3816611, at *1-2 (S.D.N.Y. July 19, 2013) ("Koltun II"); Koltun
v. Berry, No. 13 Civ. 1612, 2013 WL 11933966, at *1-2 (S.D.N.Y.
Oct. 25, 2013) ("Koltun III"), and are summarized and
supplemented here only to the extent necessary to address the
present motions.[3]

---

1612, 2016 WL 4063838, at *2 (S.D.N.Y. April 6, 2016), report
and recommendation adopted, 2016 WL 4059211 (S.D.N.Y. July 28,
2016).

[3] Because Mr. Koltun is pro se, I have examined his
opposition papers and the additional submissions made in
connection with the present motions for any material factual
allegations. See Walker v. Schult, 717 F.3d 119, 122 n.1 (2d
Cir. 2013) ("A district court deciding a motion to dismiss may
consider factual allegations made by a pro se party in his
papers opposing the motion."). I also take judicial notice of
developments in Mr. Koltun's underlying criminal prosecution,
specifically, his conviction and sentencing. (Certificate of
Disposition, Indictment of Victor Koltun dated Oct. 28, 2014,
attached as Exh. A to Declaration of David L. Posner dated April
29, 2016); see Shmueli v. City of New York, 424 F.3d 231, 233
(2d Cir. 2005) (taking judicial notice of plaintiff's state
court criminal prosecution); Hendrix v. City of New York, No. 12
CV 5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (taking

On November 6, 2010, officers from the City of Newburgh Police Department and the New York State Police (collectively "officers") went to the home of Mr. Koltun's father to question the plaintiff in connection with a double homicide investigation. (Amended Complaint ("Amend. Compl.") at 14; Decision and Order after Hearing, People v. Koltun, Ind. No. 2010-778, Index No. 13647110 (Orange Cnty. Ct. Oct. 18, 2010) ("October 18, 2010 Decision"), attached as Exh. C to Declaration of Carol C. Pierce dated June 7, 2013, at 3[4]). The officers allegedly targeted Mr. Koltun because he is an Orthodox Rabbi. (Amend. Compl. at 14). The plaintiff claims that he stated he would not speak without a lawyer and his father offered to bring him to the police station after the Sabbath, yet the officers -- "under [the] supervision of 'Orange County District Attorney Office Defendants'" -- "forced and psychologically pressured" him to go to the station. (Amend. Compl. at 14). Mr. Koltun was allegedly detained for over eight hours without food, water, medical assistance, or the ability to contact counsel. (Amend.

---

judicial notice of indictment, criminal complaint, and decision and order in plaintiff's state court prosecution attached to defendants' motions to dismiss).

[4] Neither the Amended Complaint nor the October 18, 2010 Decision are paginated, so I refer to the page numbers generated by the Case Management/Electronic Case Filing (CM/ECF) system.

Compl. at 14, 17).   He never received a "Miranda warning."
(Amend. Compl. at 15).

On December 1, 2010, Mr. Koltun was arrested -- but once
again not given a Miranda warning -- and arraigned in Newburgh
City Court.   (Amend. Compl. at 14-15, 17; October 10, 2010
Decision at 5).  He was ultimately convicted of multiple counts
of murder in the first degree and related charges on February
10, 2014, and sentenced to numerous life sentences without
parole on March 12, 2014.   (Certificate of Disposition
Indictment).  As of the date of this Report and Recommendation,
the plaintiff remains incarcerated pursuant to these
convictions.

The Amended Complaint alleges multiple constitutional
violations premised on the plaintiff's asserted wrongful arrest,
detention, prosecution, and conviction.

B.   Prior Proceedings

On March 11, 2013, the plaintiff filed his original
complaint in this action against city and state police officers,
state judges, county district attorneys, and defense counsel
involved in his pending state court criminal matter.  Most of
the defendants moved for dismissal, and I recommended that their
motions be granted.  Koltun I, 2013 WL 3816603, at *10; Koltun
III, 2013 WL 11933966, at *10.  I recommended that the remaining
claims be dismissed sua sponte.  Koltun II, 2013 WL 3816611, at

*1.   I recommended that the plaintiff's claims be dismissed with prejudice, with the exception of his false arrest and any associated supervisory liability claims, which I recommended he be allowed to re-plead.  Compare Koltun I, 2013 WL 3816603, at *10, and Koltun II, 2013 WL 3816611, at *3, with Koltun III, 2013 WL 11933966, at *10.   The Honorable Paul A. Crotty, U.S.D.J., adopted the Recommendations in full and granted the plaintiff leave to amend his complaint only with respect to his false arrest and supervisory liability claims.   (Order Adopting Reports & Recommendations dated March 21, 2014 ("March 21, 2014 Order") at 7).   When Mr. Koltun failed to file an amended complaint, Judge Crotty dismissed the case for failure to prosecute.   (Order dated May 19, 2014).

The plaintiff appealed, and the Second Circuit remanded the case for further consideration of whether dismissal for failure to prosecute was warranted.   (Mandate dated Aug. 13, 2015). Thereafter, I suggested that Mr. Koltun have an opportunity to file an amended complaint "consistent with the Court's March 21, 2014 order."   (Order dated Sept. 30, 2015 ("September 30, 2015 Order")).   Mr. Koltun objected, asking to "amend the entire complaint to revisit any and all claims against all defendants that are liable." (Letter of Victor Koltun filed Oct. 20, 2015, at 1).   I denied the plaintiff's request, allowing him only to file a complaint consistent with the March 21, 2014 Order and

warning that "claims inconsistent with that order shall be dismissed sua sponte." (Order dated Oct. 20, 2015 ("October 20, 2015 Order"), at 1). I later denied his renewed request to "amend [the] entire complaint" (Letter of Victor Koltun filed Oct. 27, 2015, at 1), stating that "[if] plaintiff wishes to proceed with this case, he shall comply with the October 20, 2015 Order." (Memorandum Endorsement dated Nov. 5, 2015 ("November 5, 2015 Order")). After several extensions, the plaintiff submitted his Amended Complaint, which was docketed on January 5, 2016.[5] However, contrary to the Court's directives, the Amended Complaint reasserts previously dismissed claims, asserts new claims, and names new defendants.

Discussion

   A.   Applicable Legal Standards

   To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, it must provide sufficient factual material to "allow[] the court to draw the reasonable inference

---

[5] I accepted the Amended Complaint, although belatedly and incorrectly submitted, but I noted that allowing the filing did "not indicate any determination by the Court that it is legally sufficient or that it complies with the March 21, 2014 Order." Koltun v. Berry, No. 13 Civ. 1612, 2016 WL 93278, at *1 (S.D.N.Y. Jan. 5, 2016).

that the defendant is liable for the misconduct alleged."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  While "detailed
factual allegations" are not required, a complaint must contain
more than mere "labels and conclusions" or "formulaic
recitation[s] of the elements of a cause of action."  Id. at 678
(quoting Twombly, 550 U.S. at 555).

"[A] district court may properly dismiss a case for lack of
subject matter jurisdiction under Rule 12(b)(1) [of the Federal
Rules of Civil Procedure] if it lacks the statutory or
constitutional power to adjudicate it."  Suvak v. United States,
No. 12 Civ. 6004, 2013 WL 2217171, at *1 (S.D.N.Y. May 21, 2013)
(alterations in original) (quoting Shabaj v. Holder, 718 F.3d
48, 50 (2d Cir. 2013)).  The Rule 12(b)(1) standard mirrors that
of Rule 12(b)(6) "except that '[a] plaintiff asserting subject
matter jurisdiction has the burden of proving by a preponderance
of the evidence that it exists.'"  United States v. Blake, 942
F. Supp. 2d 285, 292 (E.D.N.Y. 2013) (alteration in original)
(quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir.
2000)).

In both circumstances, a court must accept the factual
allegations in the complaint as true.  See Erickson v. Pardus,
551 U.S. 89, 94 (2007) (per curiam); New Jersey Carpenters
Health Fund v. Royal Bank of Scotland Group, PLC, 709 F.3d 109,
119 (2d Cir. 2013); J.S. ex rel. N.S. v. Attica Central Schools,

386 F.3d 107, 110 (2d Cir. 2004).   When evaluating a 12(b)(6)
motion, the court must also draw all reasonable inferences in
the plaintiff's favor.   See Erickson, 551 U.S. at 94; New Jersey
Carpenters Health Fund, 709 F.3d at 119.   Furthermore, a pro se
complaint "must be construed liberally 'to raise the strongest
arguments [it] suggest[s].'"   Walker, 717 F.3d at 124
(alterations in original) (quoting Pabon v. Wright, 459 F.3d
241, 248 (2d Cir. 2006)).   Nevertheless, this "liberal treatment
. . . does not exempt a pro se party 'from compliance with
relevant rules of procedural and substantive law.'"   Bell v.
Jendell, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quoting
Maisonet v. Metropolitan Hospital and Health Hospital Corp., 640
F. Supp. 2d 345, 348 (S.D.N.Y. 2009)).

   B.   Analysis

   The Amended Complaint, which contains eleven causes of
action premised on substantially the same facts alleged in the
original complaint, grossly exceeds the leave to amend.
Although the Court allowed Mr. Koltun to re-plead only his false
arrest and associated supervisory liability claims, the Amended
Complaint reasserts claims previously dismissed with prejudice,
asserts new causes of action, and names new defendants.   I first
address the sufficiency of claims related to Mr. Koltun's
alleged false arrest, and then consider those causes of action

and defendants that fall outside the limited scope of leave to amend granted to the plaintiff.

### 1.   False Arrest and Related Claims

Interpreting the Amended Complaint with the utmost generosity, it appears to attempt to state claims for false arrest against the following defendants as principals, as conspirators, or under a theory of supervisory liability: Muurax Davis, Aaron Weaver, Thomas Naffy, Nicholas Valentine, Michael Ferrara, Daniel C. Cameron, Francis D. Phillips II, David Hoovler, Garry Cooper, Glen Plotsky (erroneously sued as "Glen Plotsicy"), and Judge Jeffrey Berry.   (Amend. Compl. at 14-15, 24).   To the extent the Amended Complaint could be read to allege that any other defendants were involved in the plaintiff's arrest, the following analysis applies equally to them.[6]

Claims rooted in an individual's Fourth Amendment right to be free from unreasonable seizures brought under § 1983 are "substantially the same" as claims for false arrest under state law.   Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).   To establish a claim for false arrest in New York, a plaintiff must show that: (i) he was intentionally confined by the defendant, (ii)

---

[6] The Amended Complaint is rambling and often opaque.   The following interpretations reflect my best efforts to construe the complaint to raise the strongest arguments it suggests.

he was conscious of the confinement, (iii) he did not consent to the confinement, and (iv) the confinement was not privileged. Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012); Broughton v. State of New York, 37 N.Y.2d 451, 456 (1975).

Probable cause -- "a reasonable belief that a person has committed a crime," Williams v. City of New York, No. 10 Civ. 9594, 2012 WL 547508, at *6 (S.D.N.Y. Feb. 17, 2012) -- is a complete defense to a claim of false arrest. Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002). In general, "[a]n officer has probable cause to arrest when in possession of facts sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense," Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997), such as when "advised of a crime by a victim or an eyewitness," Wahhab v. City of New York, 386 F. Supp. 2d 277, 287 (S.D.N.Y. 2005). "A person who has been convicted of the crime for which he was arrested cannot state a claim for false arrest because his conviction establishes that his confinement was grounded on probable cause; therefore, it was privileged." Johnson v. Pugh, No. 11 CV 385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013); see also Phelan v. Sullivan, 541 F. App'x 21, 23-24 (2d Cir. 2013) ("A false arrest claim is defeated by the plaintiff's conviction for the offense for which he was arrested.").

As noted above, Mr. Koltun has been convicted and sentenced in the underlying criminal case in state court. Therefore, he cannot maintain a cause of action for false arrest. Because he has not established an underlying constitutional violation, he cannot state a claim for conspiracy to violate his civil rights.[7] See, e.g., Johnston v. Town of Orangetown, 562 F. App'x 39, 41 (2d Cir. 2014) ("A § 1983 conspiracy claim 'will stand only insofar as the plaintiff can prove the sine qua non of a § 1983 action: the violation of a federal right.'" (quoting Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995))). Similarly, claims alleging supervisory liability for constitutional violations must fail.[8] See, e.g., Abreu v. Schriro, No. 14 Civ. 6418, 2016 WL 3647958, at *7 (S.D.N.Y. July 1, 2016) ("Plaintiff has failed to establish any underlying constitutional violation, and therefore any claims for supervisory liability must also be dismissed on that basis."); Elek v. Incorporated Village of Monroe, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) ("[B]ecause Plaintiff has not established any

---

[7] The conspiracy claims also fail because Mr. Koltun still does not plead a sufficient "factual basis supporting a meeting of the minds." Koltun III, 2013 WL 11933966, at *10 (quoting Webb v. Goord, 540 F.3d 105, 110 (2d Cir. 2003)).

[8] Additionally, Mr. Koltun again fails to "provide a sufficient factual basis from which to infer the supervisors' personal involvement." Koltun III, 2013 WL 11933966, at *9.

underlying constitutional violation, she cannot state a claim for § 1983 supervisor liability.").

      2.  <u>Claims Previously Dismissed with Prejudice</u>

In this case, the permissible parameters of the Amended Complaint were clear. Judge Crotty's order of March 21, 2014, specifically granted the plaintiff leave to amend his complaint "only with respect to his false arrest and associated supervisory liability claims," dismissing the other claims with prejudice. (March 21, 2014 Order at 7; <u>see also</u> October 20, 2015 Order at 1; September 30, 2015 Order at 1 (applying Second Circuit's mandate and permitting plaintiff "to amend his complaint consistent with the Court's March 21, 2014 order")). However, the Amended Complaint re-alleges many of the same claims against the same defendants as in the original complaint.

In his first complaint, Mr. Koltun alleged the following claims against Judge B. Harold Ramsey and Judge Berry:

> (1) Judge Ramsey "violated his civil rights in the process of arraigning him" on December 1, 2010, <u>Koltun II</u>, 2013 WL 3816611, at *1-2; and

> (2) Judge Berry "violated his rights by denying motions that would have prevented the criminal case [against Mr. Koltun] from moving forward, <u>id.</u> at *3.

I explained that these claims, which were both grounded in "a judge [] performing a judicial function," were barred by judicial immunity. <u>Id.</u> at *2-3. Judge Crotty, adopting the Report and Recommendation, dismissed the claims against the

12

judges with prejudice. (March 21, 2014 Order at 4, 7). The Amended Complaint similarly complains about Judge Ramsey's arraignment of Mr. Koltun on December 1, 2010 (Amend. Compl. at 19), and Judge Berry's legal decisions (Amend. Compl. at 21, 24). As before, Judge Berry and Judge Ramsey are protected by judicial immunity.

In the original complaint, Mr. Koltun alleged that Mr. Phillips, the former Orange County District Attorney, and Mr. Cooper, an investigator in that office, "acted in bad faith in bringing the criminal charges against him because they were motivated by 'Anti-Semitic Discriminatory Animus.'" Koltun I, 2013 WL 3816603, at *1, 6. I explained that Mr. Phillips' conduct was protected by absolute immunity and that the allegations against Mr. Cooper failed because they were merely conclusory and lacked specific facts establishing that he was involved in the conduct complained of. Id. at *8-9. The Amended Complaint suffers from similar flaws. Mr. Koltun alleges that the prosecution was based on "anti-Semitic discriminatory animus" or "ethnic and religious profiling" (Amend. Compl. at 16-17), and, once again, Mr. Phillips is immune from suit on these facts. As before, the allegations against Mr. Cooper are wholly conclusory, stating, for example, merely that Mr. Cooper -- along with other employees of the Orange County District Attorney's Office -- "had been involved

in [the] investigation against [the] plaintiff." (Amend. Compl.
at 17).

In the original complaint, Mr. Koltun alleged the following
claims against Mr. Weaver, Mr. Naffy, and Mr. Cortes, who are
police officers in the City of Newburgh Police Department, and
Mr. Simmons (a New York State Police officer who is not
mentioned in the Amended Complaint):

> (1) "that officers Weaver, Naf[f]y, Cortes, and
> Simmons violated the plaintiff's rights to free
> exercise of religion when they arrived at his house on
> Saturday, which the plaintiff observes as the Sabbath,
> to question him," Koltun III, 2013 WL 11933966, at *5;
>
> (2) "that by questioning him on a Saturday, his day of
> Sabbath, police 'obstructed and blocked' him from
> contacting his attorney," id. at *6;
>
> (3) that the police "fail[ed] to provide Miranda
> warnings prior to [] questioning [him]," id.;
>
> (4) that police officers perjured themselves before
> the grand jury and at pre-trial proceedings, id. at
> *8; and
>
> (5) that the police officers "targeted him because of
> his religious and ethnic background," id.[9]

I recommended dismissing these claims on various grounds.
The free exercise claims failed because the complaint
established that Mr. Koltun was not coerced but submitted to
questioning voluntarily, and because the fact that he could not
contact his attorney, who observed the Sabbath, did not violate

---

[9] I have omitted the false arrest claims because I have
already dealt with those allegations above.

14

his Fifth Amendment right to counsel, which "affords suspects the right to have an attorney present, not necessarily their particular attorney of choice." <u>Id.</u> at *5-6.  The failure to inform him of his <u>Miranda</u> rights prior to questioning is not, in itself, a constitutional violation.  <u>Id.</u> at *6 (noting constitutional violation occurs not when incriminating statements are compelled, but only if and when they are admitted at trial).  The perjury claims are barred by absolute immunity. <u>Id.</u> at *8.  Finally, the profiling claims, which are evaluated under the Equal Protection Clause of the Fourteenth Amendment, "refer[red] only to [Mr. Koltun's] own experience and not to any similarly situated suspects who were treated differently" and "lack[ed] any facts supporting an inference of intentional discrimination." <u>Id.</u>

The Amended Complaint makes materially the same claims, although they are not always explicitly linked to specific defendants.  For example, there are complaints that Mr. Koltun was (1) arrested on the Sabbath (Amend. Compl. at 18, 22); (2) unable to contact his preferred attorney (Amend. Compl. at 17); and (3) not informed of his <u>Miranda</u> rights (Amend. Compl. at 18).  There are also allegations of (4) perjury before the grand jury (Amend. Compl. at 22) and (5) religious and ethnic profiling (Amend. Compl. at 17-18).  Neither the purely legal

15

hurdles identified in Koltun III nor the pleading deficiencies have been corrected.

In sum, each of these claims -- against Judge Ramsey, Judge Berry, Mr. Phillips, Mr. Cooper, Mr. Weaver, Mr. Naffy, and Mr. Cortes -- has already been dismissed with prejudice, and I recommend that they (again) be dismissed. See Collier v. Boymelgreen Developers, No. 06 CV 5425, 2008 WL 835706, at *5 (E.D.N.Y. March 28, 2008) (declining to revisit claims that were previously dismissed with prejudice); Cancall PCS, LLC v. Omnipoint Corp., No. 99 Civ. 3395, 2001 WL 293981, at *6 (S.D.N.Y. March 26, 2001) (noting fact that plaintiff's claim "was already dismissed with prejudice" is "by itself[] grounds to dismiss" claim in amended complaint); see also Palm Beach Strategic Income, LP v. Salzman, 457 F. App'x 40, 43 (2d Cir. 2012) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted."); Pagan v. New York State Division of Parole, No. 98 Civ. 5840, 2002 WL 398682, at *3 (S.D.N.Y. March 13, 2002) (refusing to consider claims in amended complaint exceeding scope of permission granted to pro se plaintiff), cited with approval in Palm Beach Strategic Income, 457 F. App'x at 43. Indeed, even if these claims had been dismissed with leave to re-plead, the

16

repackaged allegations in the Amended Complaint suffer from the same defects as those in the original complaint.[10]

### 3.   New Defendants and Claims

The Amended Complaint also includes new causes of action and names new defendants, although Mr. Koltun did not receive leave to make such additions.   Indeed, the October 20, 2015 Order warned the plaintiff that claims inconsistent with the March 21, 2014 Order -- granting leave to amend his complaint only with respect to his false arrest and supervisory liability claims -- would be summarily dismissed.   (October 20, 2015 Order at 1).   I reiterated the restrictions on any amended complaint approximately two weeks later.   (November 5, 2015 Order).   That, alone, is a sufficient ground to dismiss these new claims.   See Palm Beach Strategic Income, 457 F. App'x at 43.   I shall

---

[10]   In connection with the claims against the police officers, Mr. Koltun was granted leave to re-plead his supervisory liability claims against Officers Ferrara and D'Amico.   Koltun III, 2013 WL 11933966, at *9.   However, as he has not succeeded in pleading any constitutional violation by the subordinate officers, he cannot show supervisory liability.   See, e.g., Abreu, 2016 WL 3647958, at *7; Elek, 815 F. Supp. 2d at 808.   Additionally, the allegations attempting to establish personal involvement -- such as assertions that the supervisory officers "fores[aw] [the] reckless indifference that caused [the] constitutional tort[s] . . . [by] their subordinates" and were "personally involved [by] consciously refus[ing] to prevent such . . . acts" (Amend. Compl. at 22) -- are, once again, merely conclusory.   Allegations of conspiracy are also flawed because no constitutional violation has been alleged, and the allegations of an illegal agreement are conclusory.   See Johnston, 562 F. App'x at 41; Koltun III, 2013 WL 11933966, at *10.

therefore make short shrift of some additional reasons that the new defendants and claims should be dismissed.

a.   Glen Plotsky

Mr. Plotsky was appointed to represent Mr. Koltun during his criminal proceedings. (Memorandum of Law in Support of the Motion to Dismiss the Amended Complaint by Defendant Glen Plotsky Sued Herein as Glen Plotsicy at 3-4 nn.5-6). The Amended Complaint alleges that Mr. Plotsky "delivered plaintiff[']s conviction and ridicul[ous] sentence acting in concert with 'State Actors' in furtherance of [a] civil rights conspiracy," apparently to "selective[ly] and malicious[ly] prosecute" Mr. Koltun. (Amend. Compl. at 21, 24). As noted in Koltun I, "[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983." 2013 WL 3816603, at *3 (quoting Rodriguez v. Weprin, 116 F.3d 62, 65-66 (2d Cir. 1997)). Insofar as Mr. Koltun attempts to allege that Mr. Plotsky conspired with state actors to violate his civil rights, "he has not alleged any facts that plausibly suggest that [Mr. Plotsky] . . . entered into any agreement with any other defendant to achieve an unlawful end." Koltun I, 2013 WL 3816603, at *4. The claims against Mr. Plotsky should be dismissed.

18

b.   Judge Nicholas DeRosa

According to the plaintiff, Judge Nicholas DeRosa presided over his criminal trial, which was tainted by ethnic and religious profiling and other irregularities. (Amend. Compl. at 14, 24; Memorandum of Law in Support of the Motion to Dismiss by the Judicial and State Trooper Defendants at 7).  These claims, like similar claims against Judge Berry and Judge Ramsey, are barred by judicial immunity.  See Koltun II, 2013 WL 3816611, at *2-3.

c.   Nicholas Valentine, Daniel Cameron, and Muraax Davis

Mr. Valentine is the former mayor of Newburgh, Daniel Cameron is the Chief of the City of Newburgh Police Department, and Mr. Davis is an officer in the Newburgh Police Department. (Memorandum of Law in Support of Dismissal of Defendants Nicholas Valentine, Michael Ferrara, Daniel Cameron, Aaron Weaver, Thomas Naffy, and Joseph Cortes at 7).

Mr. Koltun's claims against Mr. Valentine and Mr. Cameron appear to be based on their positions as (former) mayor and police chief.  For example, they "created liability for defendants to plaintiff" (Amend. Compl. at 15), and failed to exercise their oversight to ensure Mr. Koltun's "due care" (Amend. Compl. at 23).  Again, Mr. Koltun has failed to allege the personal involvement of these new defendants in the alleged

constitutional misconduct.  See Koltun III, 2013 WL 11933966, at
*9.

Mr. Koltun alleges that Mr. Davis engaged in racial
profiling in connection with the November 6, 2010 interrogation,
explaining that a 911 caller referred to a "rabbi," that Mr.
Davis stated that there were no rabbis in Newburgh, and that he
"pick[ed] [Mr. Koltun] to be [the] 'Rabbi' [the police were]
looking for," even though there are "1000[] Ordained Rabbis in
New York State." (Amend. Compl. at 14, 17-18, 22, 25).  Again,
as with the allegations against other Newburgh and New York
State Police officers, Mr. Koltun has not stated a claim for a
violation of his right to equal protection under the law.
Koltun III, 2013 WL 11933966, at *6.

          d.   David Hoovler, David Darwin, Langdon C.
              Chapman, Carl Dubois, Kenneth T. Jones,
              and Joseph Ryan_____

Mr. Hoovler, Mr. Chapman, and Mr. Darwin are each current
or former attorneys with the government of Orange County.
(Amend. Compl. at 6).  Mr. Dubois, Mr. Jones, and Mr. Ryan each
work in the Orange County Sheriff's Office.  (Amend. Compl. at
11).  The Amended Complaint alleges that Mr. Hoovler and the
other government attorneys engaged in selective and malicious
prosecution, failed to disclose exculpatory evidence to Mr.
Koltun, obtained Mr. Koltun's indictment based on illegally
obtained evidence and false testimony, and subjected Mr. Koltun

to double jeopardy.  (Amend. Compl. at 18, 20-22, 25-26).  The crux of the allegations against Mr. Dubois, Mr. Jones, and Mr. Ryan is that they "planted informants [and] placed wires on informants[] in order to cover up [the] fabricated case [against Mr. Koltun] buil[t] on ethnic and religious profiling." (Amend. Compl. at 25).  In addition, scattered throughout the Amended Complaint are allegations that certain of these defendants are policy makers for Orange County (Amend. Compl. at 15, 22), and that these defendants conspired to violate Mr. Koltun's civil rights (Amend. Compl. at 25).

The allegations against the government attorney defendants all relate to "advocatory conduct that is 'intimately associated with the judicial phase of the criminal process," which includes "conduct 'preliminary to the initiation of a prosecution and actions apart from the courtroom.'" Koltun I, 2013 WL 3816603, at *7 (quoting Giraldo v.Kessler, 694 F.3d 161, 165 (2d Cir. 2012)).  The prosecutors are therefore protected by absolute immunity. See id. at *7-8.

The claims against the county police defendants are barred on a number of grounds.  To the extent that he seeks to state a claim for malicious prosecution, Mr. Koltun's conviction precludes the claim. See, e.g., Thomas v. New York City Department of Education, No. 14 Civ. 8019, 2016 WL 2733131, at *1 (S.D.N.Y. May 10, 2016) (to succeed on malicious prosecution

claim, plaintiff must plead and prove favorable termination of criminal case, among other things). Moreover, because the allegations of fabricated evidence, if proved, would call into question the validity of Mr. Koltun's conviction, any claim for damages is barred by Heck v. Humphrey, 512 U.S. 477 (1994). See, e.g., Pinero v. Casey, No. 10 Civ. 4803, 2012 WL 832509, at *9 (S.D.N.Y. March 13, 2012) (Heck "precludes Section 1983 actions for monetary damages if success on such claims would necessarily call into the validity of the underlying conviction and sentence"). And the plaintiff has, again, failed to state a claim for violation of his equal protection rights due to ethnic and religious profiling.

The Amended Complaint asserts that "the wrongful acts" of Mr. Dubois, Mr. Jones, and Mr. Ryan "caused deterioration of plaintiff[']s volatile and complex serious medical conditions." (Amend. Compl. at 25). A deliberate indifference claim has both an objective and a subjective prong. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The alleged deprivation must be objectively "sufficiently serious," id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and the plaintiff must plead and prove that the charged official "[knew] of and disregard[ed] an excessive risk to inmate health or safety," id. at 66. Assuming that the deprivation alleged was sufficiently serious -- he asserts he was held for eight hours without food or water

22

and had an epileptic seizure (Amend. Compl. at 14, 17) -- he has not pleaded, except in the most conclusory terms, that any defendant acted with the requisite culpability.

Similarly, the plaintiff's assertions that these defendants are liable as supervisors or conspirators suffer from the same pleading defects as those against other defendants discussed above: Mr. Koltun has not established (1) that his civil rights were violated, (2) that the defendants were personally involved in a violation of his civil rights, or (3) that the defendants agreed with each other to violate his civil rights.

### e.   Municipal Liability

Mr. Koltun appears to attempt to plead a municipal liability claim against the County of Orange, asserting that his civil rights were violated during his interrogation and arrest pursuant to "policies . . . created [by the] aforementioned defendants' agencies." (Amend. Compl. at 22). But the Amended Complaint contains no factual detail other than such conclusory statements. See Triano v. Town of Harrison, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) ("Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, a complaint does not 'suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" (alteration in original) (internal citation omitted) (quoting Iqbal, 556 U.S. at 678)).

f.   State Law Claims

Because the federal claims in the Amended Complaint should be dismissed, the court should decline to exercise supplemental jurisdiction over any state law claims that the plaintiff may have asserted.  See, e.g., Thomas v. City of Mount Vernon, 215 F. Supp. 2d 329, 336 n.3 (S.D.N.Y. 2002).

4.   Leave to Amend

The Second Circuit has held that a pro se litigant should be afforded at least one opportunity to "amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." Gomez v. USAA Federal Savings Bank, 171 F.3d 794, 796 (2d Cir. 1999) (per curiam); accord Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991).  "[G]ranting a pro se plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."  Koehl v. Greene, No. 9:06-CV-478, 2007 WL 2846905, at *3 (N.D.N.Y. Sept. 26, 2007) (colleting cases).  Mr. Koltun has had his opportunity, and it was unsuccessful.  I recommend denying leave to amend and dismissing all claims with prejudice.

Conclusion

For these reasons, I recommend granting the defendants' motions to dismiss (Docket nos. 170, 186, 201, and 203).

24

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.   Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Paul A. Crotty, Room 1350, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.   Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          November 7, 2016

Copies transmitted this date to:

Victor Koltun
14 A 1241
Mohawk Correctional Facility
6514 State Rt. 26
P.O. Box 8451
Rome, NY 13442
(via U.S. Mail)

Douglas S. Langholz, Esq.
Morgan Melhuish Abrutyn
39 Broadway, Suite 1701
New York, NY 10006
(via ECF)

David L. Posner, Esq.
McCabe & Mack LLP
63 Washington Street, P.O. Box 509
Poughkeepsie, NY 12602
(via ECF)

Ronald W. Weiner, Esq.
Steinberg & Cavaliere, LLP
50 Main St., Suite 501
White Plains, NY 10606
(via ECF)

Carol C. Pierce, Esq.
Senior Assistant County Attorney
15 Matthews St., Suite 305
Goshen, NY 10924
(via ECF)